**IN THE UNITED STATED DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SLEEP SCIENCE PARTNERS, INC.,     ) | |
|     ) | |
|     Plaintiff,     ) | Case No.  09 CV 868 |
|     ) | |
|     v.     ) | Judge Lefkow |
|     ) | |
| SUSANNA CHIU, SUSAN CHEUNG AND     ) | Magistrate Judge Schenkier |
| MASHI CHIU,     ) | |
|     ) | |
|     Defendants.     ) | |
|     ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER AND**
**ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

Plaintiff Sleep Science Partners, Inc. d/b/a The Pure Sleep Company ("PSC"), by its attorneys, respectfully submits this Memorandum in support of its Motion for a Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction enjoining Defendants Susanna Chiu, Susan Cheung and Mashi Chiu (collectively "Defendants") from using the PSC name and trademarks without authorization.

**BACKGROUND**[1]

PSC is the exclusive manufacturer, marketer, and seller of the patented, FDA-cleared PureSleep mandibular repositioning device ("MRD").  The PureSleep MRD is an intraoral dental device used to reduce or eliminate snoring.  Only available by prescription, PureSleep is a unique snoring cessation device exclusively sold and marketed under PSC's federally registered PURESLEEP trademarks.  PSC only sells its prescription-only MRD through its website and toll-free number.

---

[1] For the sake of brevity, the Court is respectfully directed to the Complaint and supporting Declarations (Exhibits A-E) filed herewith for a detailed discussion of the factual background of this action.

Defendants are willfully and intentionally infringing, counterfeiting and diluting the PURESLEEP Marks by selling a cheap imitation of the PureSleep MRD on the internet through channels like eBay.com and Amazon.com – channels which PSC does not, indeed cannot, sell the prescription-only PureSleep MRD through. Defendants have positioned themselves on the internet to appear as if they are selling the PureSleep MRD to divert potential customers of PSC to their infringing, inferior, counterfeit product. Unless enjoined by this Court, Defendants unlawful activity shall irreparably harm PSC. Moreover, the public interest is served by enjoining Defendants' unlawful distribution of a prescription-only device. Defendants' willful and intentional infringement of PSC's prescription-only MRD coupled with their use of aliases and false addresses requires that this Order issue without notice to maintain the *status quo* until such time as a preliminary injunction hearing can be held.

## ARGUMENT

**I.      PSC Is Entitled to a Temporary Restraining Order.**

PSC is entitled to a temporary restraining order and preliminary injunction enforcing PSC's rights in the PURESLEEP Marks. Such relief invokes the sound discretion of the trial court. *Re/Max North Central v. Cook*, 272 F.3d 424, 429 (7th Cir., 2001). A party seeking a preliminary injunction must demonstrate some likelihood of succeeding on the merits and that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *Pride Communications Ltd. Partnership v. WCKG, Inc.*, 851 F.Supp. 895, 900 (N.D. Ill., 1994)(quoting *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992)(citations omitted). Where these threshold tests are met, the court considers the irreparable harm to the non-

moving party if preliminary relief is granted, "balancing that harm against the irreparable harm to the moving party if relief is denied;" and the interests of the public. *Id.* The court then "'weighs' all four factors in deciding whether to grant the injunction.'" *Id.*[2] At this stage, the plaintiff need only demonstrate that it has a "better than negligible" chance of success on the merits. *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988).

A.      **PSC Has A Likelihood of Success on the Merits.**

PSC asserts claims for trademark infringement and counterfeiting, false designation of origin and unfair competition, trademark dilution, violation of the Illinois Deceptive Business Practices Act and unfair competition under Illinois common law. With the exception of trademark dilution, the Court looks to the same factors for each of these claims in determining if PSC has some likelihood of success on the merits. *Tv Land v. Viacom*, 908 F.Supp. 543, 553 (N.D. Ill. 1995)(factors considered for claims under Lanham Act, Illinois unfair competition and Illinois Deceptive Business Practices Act are one and the same); *see also General Motors Corp. v. New A.C. Chevrolet, Inc.*, 91 F. Supp. 2d 733, 742 (D.N.J. 2000)(finding of trademark infringement, by necessity, supports an additional finding that the defendant is also guilty of unfair competition). For the reasons set forth below, PSC clearly has more than "some likelihood" of success on the merits and is entitled to the injunctive relief sought.

1.      **PSC Will Prevail On Its Infringement and Illinois Claims.**

PSC prevails on its claims by demonstrating that the PURESLEEP Marks are protectable trademarks and that there is a likelihood of confusion between the

---

[2]   The factors considered in adjudicating temporary restraining order applications are the same as those considered in motions for preliminary injunction. *Lundgrin v. Clayton*, 619 F.2d 61, 63 (10th Cir. 1981).

PURESLEEP Marks as used or intended to be used in the marketplace. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000); *Ty, Inc., v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001)(plaintiff prevails in an action for trademark infringement by establishing a likelihood of confusion as to the origin of the defendant's product.")(quoting *Int'l Kennel Club*, 846 F.2d at 1084); *Horn Abbot Ltd. v. Sarsaparilla Ltd.*, 601 F.Supp. 360, 365 (N.D. Ill., 1984)(crucial test for trademark infringement is whether the alleged infringer is using the same or similar mark in a way which is likely to confuse or deceive the public).

> a. **The PSC PURESLEEP Marks are Valid, Protectable Trademarks.**

Trademarks are grouped into four categories which, in ascending order, are: (1) generic marks, (2) descriptive marks, (3) suggestive marks, and (4) arbitrary and fanciful marks. *CAE, Inc. v. Clean Air Eng'g., Inc.*, 267 F.3d 660, 667 (7th Cir, 2001) Arbitrary and fanciful marks are inherently distinctive and like suggestive marks, are protected without the need for proving secondary meaning. *Id.* A mark registered on the principal register of the U.S. Patent and Trademark Office is treated as *prima facie* evidence of the validity of the registered mark and thus, its protectability under the Lanham Act. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)("Registration by the PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive.")(citing *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 563 (2d Cir. 1990)). PSC owns two registrations for the PURESLEEP Marks. These marks were registered by the U.S. Patent and Trademark Office without any secondary meaning

evidence. *See* Declaration of H. Flick ("Flick Dec."), ¶8. Thus, PSC is entitled to Lanham Act protection of the PURESLEEP marks.[3]

### b. There is a Likelihood of Confusion.

In the Seventh Circuit, courts look to a number of factors in determining if a likelihood of confusion exists. *Ty, Inc.,* 237 F.3d at 897 -898 (factors considered are similarity of the marks, similarity of the products, manner use, degree of care likely to be used by consumers, strength of the plaintiffs mark, actual confusion and defendant's intent to palm off its goods as those of the plaintiffs). A showing that the Defendants intended to adopt the Plaintiff's marks is given great weight in applying the likelihood of confusion factors because, there is a presumption that they intended to create consumer confusion between the products. *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 857 (7th Cir.1982)(a presumption of consumer confusion exists in instances of intentional copying); *Horn Abbott*, 601 F.Supp at 365 ("An obvious attempt to cash in on a senior user's reputation and advertising leads invariably to a conclusion that likelihood of confusion not only exists, but was intended by the newcomer.")(quoting *Menley & James Laboratories, Ltd. v. Approved Pharmaceutical Corp.*, 438 F.Supp. 1061, 1067 (N.D.N.Y. 1977)); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir.1992), cert. denied, 507 U.S. 1042 (1993)(where the conflicting mark is identical and the goods are closely related, the mark's strength becomes "of little importance."). In fact, "where such intent has been shown, the inference of likelihood of

---

[3]     Even if the PURESLEEP Marks had not been registered, the marks are clearly suggestive in that the terms "pure" and "sleep" by themselves do not describe an anti-snoring intraoral device. Rather, the marks are suggestive as some additional mental process is required to associate the marks with the PureSleep MRD. *Sands, Taylor & Wood Co. v. Quaker Oats, Co.*, 978 F.2d 947, 953 (7th Cir.1992)( A suggestive mark is one "which requires some operation of the imagination to connect it with the goods.").

confusion is readily drawn.". *HMH Pub. Co., Inc. v. Brincat*, 504 F.2d 713, 720 (9th Cir. 1974)(quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 160 (9th Cir.)).

Here, PSC has provided ample evidence of Defendants' intent to palm off its inferior product as that of PSC, including Defendants use of the PURESLEEP Marks to advertise, promote and sell an almost identical product for the same use – snoring cessation. *See* Flick Dec, ¶¶19-21. By exploiting PSC's inability to sell on sites such as eBay.com and Amazon.com, Defendants have saturated this online retail marketplace with the PURESLEEP Marks misleading consumers into thinking they are purchasing the prescription only PureSleep MRD. Consumers cannot possibly be expected to distinguish between the two products. That there is actual confusion in the marketplace is not surprising. Indeed, Defendants' entire business model is designed to draw consumers seeking to buy the PureSleep MRD to purchase their counterfeit product instead. *See* Flick Dec, ¶¶23-26..

That the actual product mailed to the consumer might not bear the PURESLEEP Marks is irrelevant.[4] Courts have consistently held that a "counterfeit" is not limited to goods that deceive only the immediate purchaser. The fact that the buyer of a ROLEX® watch knows that it is a fake does not mean that there is no confusion by those who observe the buyer wearing the watch, receive the watch as a gift or read reviews of the watch online. *United States v. Gantos*, 817 F.2d 41, 43 (8th Cir. 1987); *see also General Elec. Co. v. Speicher*, 877 F.2d 531, 534 (7th Cir, 1989)(defendants unlawfully

---

[4] PSC has only had the opportunity to inspect one of Defendants' products. *See* Declarations of Douglas Fenton, DDS and Doug Meharry. Discovery will be necessary to determine if Defendants are also attaching the PURESLEEP Marks to the products shipped.

counterfeited the plaintiff's marks by placing non-GE products into GE boxes and selling them). Similarly, Defendants are leading consumers to believe they are the authorized sellers of the prescription-only PureSleep MRD with their false and misleading promotion, marketing, advertising and sale of the inferior Anti-Snore product. This is all the more egregious because Defendants are misleading consumers to believe they are buying the patented Class II Medical Device without a prescription.[5] *See* Flick Dec, ¶22.

Plainly, Defendants saturation of the online retail market has made them so closely associated with the PURESLEEP Marks that it is impossible for consumers to distinguish between the product sold by PSC and that sold by Defendants. Unless enjoined by the Court, Defendants' continued use of the PURESLEEP Marks will cause confusion in the marketplace. Simply put, there can be no question that Defendants' continued, unauthorized use of the PURESLEEP Marks will cause consumer confusion and, accordingly, constitutes trademark infringement and unfair competition in violation of sections 32(1) and 43(a) of the Lanham Act.

## 2. PSC Will Prevail on its Dilution Claims.

Section 43(c) of the Lanham Act prohibits dilution by protecting trademark owners from the erosion of the distinctiveness and prestige of a trademark. *Eli Lilly,* 233 F.3d at 466. Section 45 of the Lanham Act defines "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the

---

[5] Defendants' manipulation of the fact that PSC cannot sell its prescription only PureSleep MRD on eBay.com and the like also creates the risk of "reverse confusion." *See Sands, Taylor & Wood,* 978 F.2d at 957 (junior user can cause "reverse confusion" by saturating the market with a trademark similar or identical to that of the senior user). Unless Defendants are enjoined, consumers will believe they are buying the PureSleep MRD from PSC or its authorized distributor. *Id.* The result is that the PSC will "lose the value of the trademark – its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." *Id.* (holding that "reverse confusion" violates the Lanham Act)(quoting *Ameritech, Inc. v. Am. Info. Technologies Corp.*, 811 F.2d 960, 964 (6th Cir.1987)).

presence or absence of competition between [the marks] or likelihood of confusion...."
*Kraft Foods Holdings, Inc. v. Helm*, 205 F.Supp2d 942, 948 (N.D. Ill. 2002) (citing 15
U.S.C. § 1127). Dilution is shown where: (1) the senior mark is famous; (2) the junior
mark is being used in commerce and for commercial purposes; (3) the use of the junior
mark began after the senior mark became famous; and (4) the junior mark causes dilution
of the senior mark. 15 U.S.C. § 1125(c).

The PURESLEEP Marks are clearly famous in the snoring cessation industry.
Flick Decl., ¶¶10-17. PSC's product is the benchmark by which all other MRDs are
compared. PSC has spent millions on advertisements that have aired on TV, the internet
and radio tens of thousands of times. *Id.* The PureSleep MRD has been featured in
numerous news articles and, in perhaps the pinnacle of its fame, was recently the subject
of a joke on The Jay Leno Show. *Id.* Indeed, why else would Defendants be using the
PURESLEEP Marks but to divert those seeking the high-quality PureSleep MRD to their
inferior product? PSC is also clearly the senior user and Defendants' use of the internet
satisfies the "in commerce" requirement of Section 43(c). *Kraft Foods*, 205 F.Supp2d at
948.

Dilution occurs by blurring or tarnishment. *Id.* at 948 (citing *Eli Lilly*, 233 F.3d at
468). Dilution by tarnishment occurs when "a junior mark's similarity to a famous mark
causes consumers to mistakenly associate the famous mark with the defendant's inferior
or offensive product." *Id.* With tarnishment, the positive associations that the public
once had for plaintiff's product have been "corroded" and have decreased the mark's
value. *Id.* (citing McCARTHY, TRADEMARKS AND UNFAIR COMPETITION §
24:95). Blurring consists of a "whittling away" of the selling power of the mark. *Sally*

*Gee, Inc. v. Myra Ilogan, Inc,* 699 F.2d 621, 625-6 (2d Cir. 1983). Here, there can be no doubt that Defendants' unlawful use of the PURESLEEP Marks is causing dilution. *Eli Lilly,* 233 F.3d at 468 (proof of a mere "likelihood of dilution" is sufficient to satisfy the "causes dilution" element).

Defendants' use both blurs and tarnishes the PURESLEEP Marks, thereby diluting the distinctive quality of the marks and lessening the capacity of the marks. The PureSleep MRD is a patented intraoral device invented and developed by a highly respected dentist that can only be sold through certain channels (which do not include eBay and the like). *See See* Flick Dec, ¶¶4-5; *See* Fenton Dec. ¶4-6. The product cannot be obtained without a prescription. When consumers purchase a PureSleep MRD bearing the PURESLEEP Marks, they believe they are buying a snoring cessation device of the highest quality from a prescribing dentist that has been cleared by the FDA. Consumers are assured they are appropriate candidates for the PureSleep MRD precisely because it requires a prescription and was invented by a dentist. Defendants' product on the other hand, is not of high quality. *See* Fenton Dec. ¶7. In fact, Defendants' product could actually impair breathing in its users because of the narrow opening it provides. *Id.* Defendants are either producing a cheap knock-off of the PureSleep MRD and misrepresenting it as being PSC's patented prescription only MRD or else they are actually selling a Class II Medical Device MRD without a prescription under the PURESLEEP Marks. Either scenario is unlawful and has the effect of tarnishing or blurring PSC's valuable PURESLEEP Marks.

Plainly, Defendants have appropriated the PURESLEEP Marks in a blatant attempt to capitalize on the fame and recognition of those marks. It is plain from the

content of the Defendants promotion, marketing, advertising and sale of the Anti-Snore device that they are using the PURESLEEP Marks in a manner that dilutes the distinctive quality of the PURESLEEP Marks under which the patented prescription-only PureSleep MRD is sold. In short, Defendants are using the famous PURESLEEP Marks in a manner that dilutes their distinctive quality, and such use should be enjoined.

**B.      PSC Is Suffering Irreparable Injury.**

Once trademark infringement or dilution is established, irreparable harm is presumed. That is because the harm caused by trademark infringement or dilution is by its "very nature irreparable and not susceptible to of adequate measurement for remedy at law." *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982); *Hyatt Corp. v. Hyatt Legal Srvcs.*, 736 F.2d 1153, 1158 (7th Cir.1984) (noting that dilution of a trademark is "remarkably difficult to convert into damages."). As is the case here, "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, "the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Int'l Kennel Club*, 846 F.2d at 1092. Clearly, Defendants' use of the PURESLEEP Marks poses an immediate and irreparable threat to the distinct and exclusive image PSC has created, through great expense and painstaking effort.

For years, PSC has expended substantial amounts advertising and promoting the PURESLEEP Marks and PSC's name and reputation. As a result of this effort and expense, PSC has developed substantial goodwill and enjoys a special appeal to consumers. By their continued use of the PURESLEEP Marks, Defendants are flagrantly

trading on the goodwill PSC has developed over the years and diluting, if not potentially destroying, this special appeal and goodwill through the sale of their inferior product.

The irreparable harm which MBE is suffering, and will continue to suffer, however, is not only a matter of legal presumption but of plain and simple fact. PSC exercises strict quality control over the use of the PURESLEEP Marks and dispensing of the PureSleep MRD with a prescription offered under those marks. Well beyond PSC's control, Defendants are selling an inferior product as if it were the PureSleep product and doing so without a prescription. Defendants are using the PURESLEEP Marks to either sell a cheap mouth guard as if it was a Class II Medical Device MRD or they are selling a Class II Medical Device MRD without a prescription. Either is harmful to PSC and the goodwill it has spent years developing under the PURESLEEP Marks. The potential harm associated with such continued unauthorized use of a trademark is sufficient to justify injunctive relief. *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1294 (9th Cir. 1992).

### C. Any Threatened Harm To Defendants Is The Result Of Their Own Wrongful Actions.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). That is because "[o]ne who adopts the marks of another for similar goods acts at his own peril" given that he has no claim to the profits or advantages derived thereby. *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)(quoting *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103, 107 (2nd Cir. 1978)). The balance of harms, as such, "cannot favor a defendant

whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecommunications Industry Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996); *see also Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977), cert. denied, 434 U.S. 1070 (1978)(the hardship of requiring one who willfully infringes another's mark to cease that infringement "merit[s] little equitable consideration").

What's more, PSC is seeking a very narrow injunction that allows the Defendants to continue their business. All that PSC requests is that Defendants do so without infringing upon the PURESLEEP Marks. *See Cook*, 272 F.3d at 433 (upholding injunction which does not prohibit defendant from "maintaining relationships with existing clients or developing relationships with new clients" but only required the Defendant to cease using the Plaintiff's marks and logos). To the extent Defendants are harmed by delisting all advertisements containing the PURESLEEP Marks, any such "harm" is occasioned solely by Defendants' own decision to wrongfully and intentionally trade upon the PURESLEEP Marks. Defendants will remain free to sell their products – just without using the PURESLEEP Marks.

> **D.     The Public Interest Is Served By Issuance Of An Injunction.**

Generally, public interest in a trademark case "is most often a synonym for the right of the public not to be deceived or confused." *Opticians Assoc. of Am.*, 920 F.2d at 197; *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)(same). The "strong public interest in preventing consumer confusion and fraud favors issuance of … injunctive relief." *Paisa, Inc. v. N & G Auto, Inc.,* 928 F. Supp. 1009, 1018 (C.D. Cal. 1996); *accord, KFC Corp v. Goldey*, 714 F. Supp. 264, 267

(W.D. Ky. 1989). In other words, "it is in the public interest for the Court to prevent public confusion over the source or origin of products provided to the public." *Malarkey-Taylor Assocs.*, 929 F. Supp. at 478. Moreover, the public interest is disserved by permitting Defendants' continuing false and misleading advertising and dispensing of a purported MRDs without a prescription. This is especially true with regard to the advertisement on Cheap-Store.net where Defendants use the PURESLEEP Marks and claim the product is a <u>replacement</u> for the CPAP machine designed to treat the serious condition of sleep apnea. Here, the injury to the public is patent, and the injunctive relief PSC seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. Unless Defendants' continuing misuse of the PURESLEEP Marks is enjoined, the public will continue to be confused and misled by their conduct.

## II.      PSC's Notice to Defendants.

PSC became aware of Defendants' infringing activities in late 2008. PSC has repeatedly contacted Defendants to demand they cease their infringement to no avail. *See* Flick Decl., ¶¶36, 40. PSC has also contacted the online retailers where Defendants sell their infringing and counterfeit devices with limited piece-meal delisting of some of Defendants' advertisements. Flick Decl., ¶¶32-33. That Defendants have no intention of ceasing their infringing activities and intend to evade PSC, is further evidenced by their use of fake addresses and aliases. Without a TRO to maintain the *status quo*, PSC fears that Defendants will simply evade process and disappear, only to re-emerge on the internet under new aliases and at a new address. Given these facts and the narrow nature of the relief requested, notice should not be required pursuant to Rule 65(b). In any

event, PSC will send these pleadings to Defendants via email and attempt to have them personally served at the 3208 S. Aberdeen, Chicago, IL address.

### III.     Security is Not Required, but in any event, Should not Exceed $1,000 Bond.

Rule 65(c) provides that no restraining order or preliminary injunction shall be issued except with security "in such sum as the court deems proper." It is accordingly within this Court's discretion to require no security at all in connection with the relief sought. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1998), cert denied, 519 U.S. 821 (1996); *see also Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964) (district court's decision not to require bond upheld because of trial court's "wide discretion."). This is especially so where, as here, the injunction sought will cause no harm to Defendants. *Id.*; *see also Special Education Services v. RREEF Performance Partnership-I, L.P.*, 1996 WL 41251 Case No. 95 C 6468 (N.D. Ill. Jan. 29, 1996)(requiring no bond where the injunction would do no harm to the defendant). All that PSC is requesting is that Defendants cease using the PURESLEEP Marks. Defendants are free to sell whatever products they choose so long as they do not infringe upon the PURESLEEP Marks. Moreover, PSC has substantial sources of revenue rendering a bond moot. *Winnebago Tribe of Nebraska v. Stovall*, 216 F.Supp.2d 1226 (D. Kan. 2002), aff'd, 341 F.3d 1202 (10th Cir. 2003) (wherein the court ordered that plaintiff need not post bond to secure preliminary injunction where there was no proof the defendant was likely to suffer harm and plaintiff had substantial sources of revenue). Should the Court nevertheless determine that security should be provided, PSC respectfully submits that a cash bond in the amount of $1,000.00 is appropriate under the circumstances.

**IV.     Expedited Discovery Is Necessary To Avoid Irreparable Injury to PSC.**

PSC is being irreparably harmed by Defendants' on-going and willful infringement, counterfeiting and dilution. PSC has had little cooperation from online retailers such as eBay.com and Amazon.com and trying to stop Defendants' activities. PSC has been able to trace Defendants to one address in Chicago but will need discovery from third parties to ensure Defendants are located and held accountable for their unlawful activities. Without Court ordered discovery, PSC will be irreparably harmed as Defendants continue their activities unfettered and only assume new aliases and addresses once served with the Complaint. *See Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F.Supp. 473, 475 (S.D.N.Y. 1990)(Expedited discovery warranted when requesting party shows irreparable harm, some likelihood of success on the merits, some connection between the expedited discovery and the avoidance of irreparable injury and some showing that the injury that will result without the discovery). PSC's discovery, at this point, would be limited to subpoenas to third parties where Defendants have accounts or memberships.

<u>CONCLUSION</u>

A temporary restraining order is necessary to maintain the status quo until a hearing can be had and to achieve the purposes of the Lanham Act. Unless enjoined by this Court, Defendants will continue to profit unlawfully from their infringement causing confusion in the market place and dilution of the PURESLEEP Marks. The relief PSC seeks is narrowly tailored to prevent Defendants' unlawful activity. PSC is not trying to shut Defendants' business down. All PSC is asking for is an injunction to prevent any further irreparable harm to its business and the PURESLEEP Marks.

Dated:  February __, 2009           Respectfully submitted,

**SLEEP SCIENCE PARTNERS, INC.**

 /s/ Alice A. Kelly
Alice A. Kelly (#6281897)
The Kelly Law Group, LLC
33 West Ontario Street, Suite 26H
Chicago, IL 60654
312.451.6211
312.265.1157 (fax)

*Of Counsel:*
Heather Flick
The Flick Group
425 California Street, Suite 2025
San Francisco, CA 94104
415-765-6685